**ORAL ARGUMENT NOT YET SCHEDULED**

———————————————————————————

**No. 25-5313**

———————————————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————————————————————

**LAS AMERICAS IMMIGRANT ADVOCACY CENTER,** *et al.*,

**Plaintiffs-Appellees,**

**v.**

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY,** *et al.*,

**D*efendants-Appellants*.**

———————————————————————————

**On Appeal from the United States District Court
for the District of Columbia**

———————————————————————————

**BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM
AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS**

———————————————————————————

**CHRISTOPHER J. HAJEC
MATT A. CRAPO
EDWIN E. PIETERS
Federation for American Immigration Reform
25 Massachusetts Ave. NW STE. 330
Washington, DC 20001
chajec@fairus.org
(202) 328-7004**

**Attorneys for *Amicus Curiae*
Federation for American Immigration Reform**

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Cir. R. 28(a)(1), the undersigned counsel certifies as follows:

A. Parties and *Amici*

The parties, intervenors, and *amici* appearing before the district court, and in this Court, are listed in the Brief for Defendants-Appellants, with the addition of this brief by the Federation for American Immigration Reform (FAIR).

B. Rulings Under Review.

The ruling under review is available at *Las Ams. Immigrant Advoc. Ctr. v. United States Dep't of Homeland Sec.*, 783 F. Supp. 3d 200 (D.D.C. 2025).

Dated: August 14, 2026 /s/ Christopher J. Hajec

# CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* Federation for American Immigration Reform is a non-profit corporation that has no parent corporations, and no publicly held corporation owns 10% or more of any of its stock.

Dated: August 14, 2026 /s/ Christopher J. Hajec

**TABLE OF CONTENTS**

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

CORPORATE DISCLOSURE STATEMENT ........................................ ii

TABLE OF AUTHORITIES ...................................................... iv

GLOSSARY OF ABBREVIATIONS ........................................ vi

IDENTITY, INTEREST AND AUTHORITY TO FILE .......................................1

SUMMARY OF ARGUMENT ...............................................................2

ARGUMENT ................................................................................2

    I.    The President has inherent and statutory authority to exclude aliens...........2

    II.   The district court erred by intruding upon the President's broad and unreviewable authority to exclude aliens at the southern border or to restrict their entry .....................................................................5

CONCLUSION ..........................................................................9

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dalton v. Specter*,
   511 U.S. 462 (1994)...................................................................................7, 8

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
   189 F. Supp. 3d 85 (D.D.C. 2016)........................................................8

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952)................................................................................3

*Hernandez v. Mesa*,
   589 U.S 93 (2020).................................................................................3

*Mistretta v. United States*,
   488 U.S. 361 (1989)...............................................................................4

*Nishimura Ekiu v. United States*,
   142 U.S. 651 (1892)...............................................................................3

*Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
   333 U.S. 103 (1948)...............................................................................3

*Trump v. Hawaii*,
   585 U.S. 667 (2018).............................................................................3, 5

*Tulare Cty. v. Bush*,
   185 F. Supp. 2d 18 (D.D.C. 2001).......................................................8

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950)............................................................................3, 4

*United States v. Melgar-Diaz*,
   2 F.4th 1263 (9th Cir. 2021) ..............................................................4

## STATUTES AND REGULATIONS

8 C.F.R. § 208.13(g) ..................................................................................6

8 C.F.R. § 208.35(a) ..................................................................................6

8 C.F.R. § 1208.13(g) ................................................................................6

8 C.F.R. § 1208.35(a) ................................................................................6

8 U.S.C. § 1182(f) ...............................................................................4, 5, 7

8 U.S.C. § 1158(b)(2)(C) ...........................................................................6

Secure Fence Act of 2006,
Pub. L. 109-367, 120 Stat. 2638 (codified as a note to 8 U.S.C. § 1701) ............1

## MISCELLANEOUS

Fed. R. App. P. 29(a)(4)(E) ........................................................................1

Fed. R. App. P. 29(a)(6) ............................................................................1

Proclamation 10773, *Securing the Border*,
89 Fed. Reg. 48487 (June 7, 2024) ................................................................5, 6

Proclamation 10817, *Amending Proclamation 10773*,
89 Fed. Reg. 80351 (Oct. 2, 2024) .................................................................6, 7

*Securing the Border* (Interim Final Rule),
89 Fed. Reg. 48710 (June 7, 2024) ................................................................6

## GLOSSARY OF ABBREVIATIONS

DHS        Department of Homeland Security

DOJ        Department of Justice

FAIR        Federation for American Immigration Reform

INA        Immigration and Nationality Act

# IDENTITY, INTEREST AND AUTHORITY TO FILE[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interest. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of advancing this mission.

The decision in this case will likely have a national impact on the ability of the executive branch of the federal government to achieve and maintain operational control of the border, defined by Congress as "the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." Secure Fence Act of 2006, § 2(b), Pub. L. 109-367, 120 Stat. 2638 (codified as a note to 8 U.S.C. § 1701). *Amicus* FAIR has a direct interest in defending the executive branch's authority to secure the borders of the United States.

---

[1]  All parties have consented to a timely-filed *amicus* brief. Because the government's opening brief was filed on Friday, August 7, 2026, this brief is timely. FED. R. APP. P. 29(a)(6) (permitting *amicus* briefs to be filed "no later than 7 days after the principal brief of the party being supported is filed"). Pursuant to FED. R. APP. P. 29(a)(4)(E), undersigned counsel certifies that: no counsel for a party authored this brief in any respect; and no party, party's counsel, person or entity – other than *Amicus*, its members, and its counsel – contributed monetarily to this brief's preparation or submission.

**SUMMARY OF ARGUMENT**

The district court's vacatur of the "Secure the Border" Rule intrudes into core unreviewable presidential authority. This Court should reverse.

The district court failed to respect the separation of powers by substituting its own policy judgment for that of the President. The President has inherent and statutory authority to suspend or restrict the entry of aliens whenever he finds their entry to be detrimental to the national interest. When the President exercises this combined statutory and inherent sovereign power to manage an operational crisis at the southern border, his policy choices and threshold capacity determinations are insulated from judicial review. The district court erred by treating a high-stakes national security and foreign affairs crisis as a routine administrative agency matter open to judicial second-guessing.

The Rule's numerical thresholds and capacity-management controls lawfully impose restrictions on entry. Because the district court's judgment impinges on lawful exercises of delegated and inherent authority of the executive branch, this Court should reverse.

**ARGUMENT**

**I.   The President has inherent and statutory authority to exclude aliens.**

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of

aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). The President's authority over immigration and naturalization stems from his constitutional authority to superintend foreign relations and protect national security. See, e.g., *Hernandez v. Mesa*, 589 U.S 93, 103-04 (2020) (declining to create a new Bivens remedy for the behavior of border patrol because it is a matter "relating to the conduct of foreign relations" and the executive branch "has the lead role in foreign policy"); *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (acknowledging that immigration related decisions "implicate relations with foreign powers or involve classifications defined in the light of changing political and economic circumstances"); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of republican form of government"); *Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*,

338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent *executive* power.") (emphasis added); *United States v. Melgar-Diaz*, 2 F.4th 1263,1268 (9th Cir. 2021) (holding that the exclusion of aliens is a "fundamental act of sovereignty" and is "inherent in the executive power.").

Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. Section 212(f) of the Immigration and Nationality Act ("INA") provides:

> Whenever the President finds that the entry of any aliens or class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f). This provision is not a mere delegation of authority, but an implementation of the President's inherent constitutional power to exclude aliens, *Knauff*, 338 U.S. at 542, and as such is not subject to the restrictions the Constitution ordinarily places on Congress's power to delegate rule-making discretion. *See, e.g., Mistretta v. United States*, 488 U.S. 361, 372 (1989) (setting forth the delegation doctrine). And, indeed, as the Supreme Court has recognized,

4

§ 1182(f) "exudes deference to the President in every clause." *Trump v. Hawaii*, 585 U.S. 667, 684 (2018); *see also id.* at 693 (describing the President's authority as "sweeping"). The President's exclusion determinations under the Proclamations were made within the hard core of his inherent constitutional power.

**II.     The district court erred by intruding upon the President's broad and unreviewable authority to exclude aliens at the southern border or to restrict their entry.**

The district court's intrusion into executive border policy flouts nearly a century of unbroken precedent establishing that the executive's power to exclude noncitizens is a fundamental attribute of national sovereignty, largely insulated from judicial second-guessing. Because both Article II of the Constitution and the express terms of the INA vest the executive with sweeping, discretionary authority to control the entry of foreign nationals, the President's determination to restrict entry during a border crisis constitutes a non-justiciable political action. Congress, for its part, has no enumerated power to require the President to bring certain aliens into the country.

Here, the President issued a Proclamation under 8 U.S.C. § 1182(f) in which he found the entry of certain aliens during high levels of encounters to be detrimental to the interests of the United States. Proclamation 10773, *Securing the Border*, 89 Fed. Reg. 48487 (June 7, 2024). The President "suspended and limited" the entry of any alien across the southern border when the number border

encounters exceed a specific threshold and authorized the Secretary of Homeland Security ("DHS") and the Attorney General to issue regulations to implement the proclamation, "including any additional limitations and conditions on asylum eligibility that they determine are warranted, subject to any exceptions that they determine are warranted." *Id.* at 48491-92. The DHS and DOJ subsequently issued a joint interim final rule ("IFR"), *Securing the Border*, 89 Fed. Reg. 48710 (June 7, 2024), implementing the restrictions in the Proclamation, including a limitation on asylum eligibility during emergency border circumstances. *See* 8 C.F.R. §§ 208.13(g), 208.35(a), 1208.13(g), 1208.35(a).

The President later issued another Proclamation in which he further restricted the entry of any alien at the southern border and made it effective upon the issuance of a final Securing the Border Rule (the "Rule"). Proclamation 10817, *Amending Proclamation 10773*, 89 Fed. Reg. 80351, 80352-53 (Oct. 2, 2024) (increasing the period of time that the encounter-based asylum ban would remain in place and including unaccompanied alien children in the daily encounter numbers).

The district court found that the Rule conflicts with the asylum statute because "the limitation on asylum eligibility exceeds the authority that Congress conferred on the Secretary of Homeland Security to 'establish additional limitations and conditions' on asylum …." JA729 (quoting 8 U.S.C.

§ 1158(b)(2)(C)). The district court erred in finding that the President's authority under §1182(f) to suspend or restrict the entry of aliens to be "irrelevant here." JA727 n.11. The President directed the Secretary of Homeland Security and the Attorney General to restrict asylum as an exercise of his authority to exclude aliens or to restrict their entry into the United States under § 1182(f). Indeed, in his second Proclamation, the President cited the asylum restrictions in the IFR with approval as an appropriate implementation of Proclamation 10773. *See*, *e.g.*, 89 Fed. Reg. 80351-52.

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is presidential or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter*, 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, one source of independent authority for the Rule came directly from the President in the exercise of both his inherent constitutional authority over foreign affairs and immigration policy and statutory authority under § 1182(f), and the President directed the agencies to promulgate a rule restricting asylum. As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.,* the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.*, 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, e.g., Tulare Cty. v. Bush*, 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton*, 511 U.S. at 470) (other internal citations omitted).

In promulgating both the IFR and the Rule, the agencies acted at the direction of the President and implemented his Proclamations in restricting asylum. Accordingly, the agencies exercised independent Article II authority, and the district court lacked jurisdiction to review their actions under the APA. *Dalton*, 511 U.S. at 477. It is, of course, not to the prejudice of the unreviewability of the

agencies' actions that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his inherent authority under the Constitution are at least equally so. Therefore, the district court lacked jurisdiction under the APA to vacate the Rule and should be reversed.

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision below.

Dated: August 14, 2026

Respectfully Submitted,

/s/ Christopher J. Hajec
CHRISTOPHER J. HAJEC
MATT A. CRAPO
EDWIN E. PIETERS
Federation for American Immigration Reform
25 Massachusetts Ave. NW STE. 330
Washington, DC 20001
chajec@fairus.org
(202) 328-7004

Attorneys for *Amicus Curiae*
Federation for American Immigration Reform

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Times New Roman 14-point, proportionately spaced, serif typeface, in Microsoft Word.

2.      This brief complies with FED. R. APP. P. 29(a)(5) and 32(a)(7)(B)(i) because it contains a total of 2,056 words, excluding material not counted under Rule 32(f).

Dated: August 14, 2026                    Respectfully Submitted,

                                          /s/ Christopher J. Hajec